The first case for today is 2016-51425, United States of America v. Servando Benitez-Reynoso. You may proceed. May it please the Court, counsel. Solstice, we have this appearance before the appellant, Your Honor. Your Honors. The Court grants me liberty. This is my second appearance in the Fifth Circuit, so do I just start? Do you just want me to jump right in? Yes, sir. And we have read the facts, but you can tell us something pertinent about them, but you don't need to go through them all. Just keep – start your argument. Okay. Thank you. It's good to know and to remember and emphasize that in this jury trial that lasted over a course of three days, there was multiple objections raised to the use, the introduction of evidence related to a cell phone. In our bench conferences, the Court, in one instance, says, well, everybody has a cell phone, and his reasoning as to why it wasn't harmful to let that cell phone in. And I don't even think the Court at that time really knew exactly what derivative use versus direct use. I don't even think the Court knew at that time. And I don't think he had any guidance because if you look at Fifth Circuit law, there really isn't a whole lot of guidance when it comes to the direct application of these facts to the law. If the Court erred in this respect, do we do a harmless analysis, or do you believe that it's automatically reversible error if it violated the agreement? I think it's automatically reversible error because it touches on the Fifth Amendment. It touches on these immunity agreements that are being used on a day-to-day basis, and there's virtually a whole body of work on the defense side. These agreements are relied on because the expectation is that the direct evidence will not be used against that defendant in trial. If we did have to find harmfulness, do you believe that you satisfy that? I do because, again, there was an acquittal of two counts in this indictment. The government in its brief does say there was overwhelming evidence of guilt, but if you look at the trial record, there was an acquittal on the money laundering counts. A substantial portion of the trial focused on those money laundering counts in the indictment. And if you take away the money laundering case, there's the arrest of Benitez Reynoso. The day that that happened, it happened at the length the government needed because his vehicle did not have any marijuana. He was an alleged scout vehicle. And so what the government did was they linked his vehicle to the co-defendant's vehicle. The co-defendant's vehicle had the drugs, had the marijuana. My client's vehicle had no drugs. But for that phone, that cell phone and the existence of that cell phone was a critical element to prove possession in relationship to the offense of conviction. Your argument is that the evidence gleaned from that cell phone wasn't corroborated or substantiated by any other evidence from any other source? Well, if you look at the record, there were no other witnesses called to testify as to whether or not they had – on that day, they had called Cervantes on the phone to coordinate the delivery of drugs on that day. But weren't there other cell phone records from other – There were other cell phone records, but – Co-defendants? Of co-defendants. There were other cell phone records. Didn't they not link your client? The other people's phones didn't link your client, or did they? It's unclear from the trial record whether they linked my client. But is it your – your position is not what was on the phone so much is the fact that discovery of the phone itself, right? That's the direct – that they found the – Yes. They wouldn't have found the phone at all. The phone would have remained lost. Correct. Correct what? I want to make sure I understand what you're agreeing to because you're getting to a point that's important for me. What are you agreeing to? Well, actually, I was – I wasn't – I was – you're right. I'm not agreeing to just the use of the cell phone, the fact that it existed in the patrol vehicle, the border patrol vehicle. I'm also arguing that it is – the contents of that cell phone, it is the cell phone. You can't separate it. You can't say that a tire is a tire but not the wire that's – the fibers in it. That's where I'm going because it seems to me that the object of that search, the reason they wanted the phone was not to prove the existence of the phone or not to prove that he had a cell phone. In other words, they didn't want to just get a cell phone and never turn it on. The object of possession of the cell phone was to get the information that was on the phone. Yes, correct. Do you agree with me? I agree, and twofold, that a phone existed. And that's why I felt that when the district court said, well, everybody has a cell phone. And I said, well, not in the courtroom but outside. Yeah, everybody probably has a cell phone. That was kind of not a very logical argument to make for the admission of that cell phone because that's what the district court relied on, that layman's argument – or not argument. That layman's reasoning in admitting the cell phone because what he said in the court was he said, well, I'm going to read that case later on and I'll let you know later on in the trial. But when it came up again – when it came up later on in the trial, what happens is the judge says, oh, no, that's derivative use. And he never mentioned anything about any case law he had read. He just said it's derivative use. And so he admitted the cell phone at that point because at any point in this trial, whenever that cell phone came up, I consistently objected to the admission of that cell phone and the contents of that cell phone. I think they even admitted photographs of that cell phone in the trial. Photographs of the cell phone were admitted in trial. And I also would distinguish Barnes, which is an old Fifth Circuit case. In that case, it's distinguishable because Keck pled guilty. The defendant – the analysis in that case that deals with proffer agreements, Keck pled guilty. In this case, we have a case where my client pled not guilty and went to trial. And then you have U.S., a Ninth Circuit case, which is another one that I felt was kind of close on point. But there's not much guidance there as to the definition of derivative and direct use. And, you know, if – So you just – you just want to distinguish Barnes? Is that what you're telling me? I want to distinguish Barnes in the fact that in that case it's a different situation because in that case Mr. Barnes, who actually was a co-defendant that pled guilty. But didn't the court in Barnes assume without deciding that it was a violation of the agreement, that the use of that evidence was a violation of the agreement? Isn't that what happened in Barnes? Yes. And then it did a harmless error analysis. Right. Right? That's right. All right.  I'm sorry? How is it a statement? Well, that's where there's not a lot of guidance from the Fifth Circuit. My thinking – the logical deduction I'm making is it's direct use. It's not the court decisions and the precedent. There's talk about direct use. They don't say testimony use. It says direct use. So we will not use the – I think there needs to be a distinction with the derivative use and the direct use. And the statement – isn't the statement that they said where the phone was? Correct. Okay. And so they found the phone? Yes. But then what's on the phone? Why isn't that derivative as opposed to direct? It's like backdoor hearsay, I would argue. It's basically saying, well, it's – functionally it's the same thing as saying, Servando said his phone was in the truck. You can't – obviously can't do that. What the government did in this case is the phone was found in the truck. I mean, it's the same thing, except you're leaving out the part that he said, well, Servando said. But there was no independent source that could come forward and say, well, my argument would be if the government had called a witness, a contact that was on that cell phone, and they had testified and said, yeah, I spoke to Servando that day, that would be derivative use. Because it was a lead, it was a – I found some key terms in the Castigar case, derivative leads, names of witnesses, other information. And they referenced those in the argument section as what derivative might be. I don't think that the cell phone in the contents is a lead or a name of a witness or other information. I think it's the cell phone. It's – the substance of it, it's the same thing. And so I don't think you can – and I will concede, well, it's not a statement, but it's functionally the backdoor way of allowing his statement to come into the courtroom because that's basically what you're doing. Because when you allow the evidence to come in about where the cell phone is, the only way the government knew about that was through my client's statement. And so it's basically the backdoor entry way into the courtroom. Is there some argument that this would have inevitably been found, and is that relevant in any way? I don't think the inevitably – whether it was inevitable to have been found is applicable in this case. I think that doesn't apply here. I think what applies is whether it's just plain and simply a direct use of his testimony. And I think – I just don't see how you can say that the only difference really – the only – the functional difference in the courtroom in front of a jury is the difference is Servando says his cell phone is in the car, in the patrol vehicle, or you have somebody say the cell phone was found in the patrol vehicle. I mean, it's the same – you're saying the same thing to the jury. It's just – you're using his testimony against him. And that's where also, you know, when I did the research and I'm looking for guidance, there's really not a definition of this is derivative and this is direct use. And if that is not direct use of evidence, then what is? That's the problem. Then that means everything is derivative. I mean, what would – other than his actual confession of guilt, but other than that, then why not just call it that? You can't – it's – so I guess the heart of the matter is – the simple argument is that the phone and the introduction of the cell phone is direct – it is direct use, not derivative. Okay. I think we have your argument. Is there something else that you needed to say? No, I think so. That's all I have, Your Honor. Thank you. Thank you. May it please the Court. Zachary Richter for the United States. I'd like to start with Judge Elrod's question about harmless error because I believe the Barnes case answers that question for us. It's a binding case from this circuit, and they applied a harmless error analysis to this very situation. Do you agree? In my question, I put the burden wrong, though. I said, can you establish it? You are the one who actually has to establish the harmlessness, not opposing counsel, right? That's correct, Your Honor. And we have established harmlessness in this case in a variety of ways.  One is that it linked him to the co-conspirators. As some of the questions alluded to, the first co-conspirator it linked him to was his cousin and co-conspirator who was driving the marijuana load on the day that both of them were arrested. At trial, the contents of the cousin's cell phone were discussed, and those linked the defendant to the cousin on that day. So this is a situation directly analogous to this Court's decision in Escamilla where there were two cell phones and one of them had all of the contacts on it. The other one should not have been admitted, but the Court held that any error would have been harmless because the first cell phone that was lawfully admitted had all of those contacts on it. And that's precisely what happened in this case. Because it was asked, I'll point to the record at 2154 and 2155. The other two co-conspirators who were linked to the defendant through the cell phone were linked to the defendant in other ways. There was a woman who was renting trucks that were used as load vehicles, and she was linked to the defendant through documentary evidence and also the defendant's presence at the scene of two load vehicles that were rented by that particular woman, both on the day of his arrest alongside his cousin who was driving one of those vehicles and the vehicle that was stuck in the mud close to the Rio Grande where Border Patrol agents encountered this vehicle. They knew that they tracked the footprints back to the river and they saw a load that was suspected to be marijuana on the other side of the river. The defendant was there with that load vehicle stuck in the mud, and he had demonstrably false or implausible excuses for being on the scene there. The third co-defendant the defendant was linked to through the cell phone was the individual who was driving the truck that was stuck in the mud that I just described. So in each of these instances, the connections in the cell phone are duplicative of other evidence, and that's all to say nothing of all of the other evidence from multiple co-conspirators, law enforcement testimony  and documentary evidence that corroborated the co-conspirators' testimony. So for those reasons, we think that this Court's harmless error standard, which is substantial evidence supporting the same facts, would be met here. But I wouldn't want to suggest that we're relying just on harmless error here because we do believe that this was a permissible use of the contents of the cell phone. The defendant and his counsel agreed that the government could use any investigative leads suggested by the defendant's statements, and that's what the government did. Before the proffer session that was protected by the agreement, we already knew that the defendant had a phone. We already knew the defendant's phone number, and we knew that because the defendant made a Mirandai statement directly after his arrest where he disclosed that to us. We had also gotten a search warrant and tracked the phone to the Border Patrol transport vehicle, so we knew that the phone was within the Border Patrol transport vehicle somewhere. Now, what was added at the proffer session, which was not too long after the defendant was indicted, was precisely how the defendant had concealed that cell phone within the vehicle. At that point, a Border Patrol mechanic went and disassembled part of the transport vehicle, found two cell phones, and then... Disassembled part of the vehicle? You're saying they found out how he hid it. You found out how he hid it. What you found out is where he put it. Isn't that a little bit more accurate? What did he have to disassemble? He had to disassemble the AC unit that was part of the transport vehicle. This is a big pickup truck with an enclosed unit on the back, and there's an air conditioning unit within that enclosed unit. And to get to the cell phone, he had to take apart that AC unit and take it out, and the trial testimony established that that's the mechanic testified, and he explained how he did that in this instance. But Benitez-Renoso, he didn't say, I took it apart and put the phone in there, did he? He just said it's in the air conditioning unit. At his proffer session, he indicated, as I understand it, and of course his statement isn't in the record because the government never introduced it at trial, but he dropped it down a slot, and the only way you can get that cell phone out of the slot is to take apart that. All right. And I make a big deal out of this only because y'all seem to make a big deal out of the fact that, well, we knew it was in the truck, but we had to go to the truck and we had to take something apart and we had to get to it, so all of that arguably makes it more derivative. Well, it's certainly derivative. According to you, right? Wasn't that part of your argument? That's part of our argument, but really there's a clear dividing line for this court between using the defendant's statements in the government's case in chief at trial. That's what the proffer agreement refers to, is using his statements in the government's case in chief at trial. That, on the one hand, and using those statements as investigative leads to find other evidence that we can then get a cell phone, get a search warrant to search. If it had been in the glove compartment and he said, I stuck it in the glove compartment and all the guy had to do was go open the glove compartment, you still would be saying it's derivative. It's not because it was hard to take apart. Or is it because it was hard to take apart? It doesn't, Your Honor, it doesn't hinge on the difficulty of taking anything apart. If we had been able to get out of the glove box, it would still have been a derivative use. Because, again, we're not using the defendant's statements in this instance. We're not telling the jury at any point, we never told the jury that the defendant said, I concealed the cell phone in this way. Instead, we recovered the cell phone, we got a search warrant to search the cell phone, and then we put its contents before the jury. But the object of that search was never just the cell phone, was it? I mean, if you got the cell phone and agreed that you were never going to turn it on, is it of any use to you? The phone itself. You were never just after the phone. You were after the information on the phone. Isn't that right? I believe we were after the information on that phone or any other evidence we could derive from the defendant's statements. All of that evidence that we could recover based on the investigative lead provided by the defendant's statements is derivative under the agreement, under the proffer agreement. The proffer agreement, the proffer letter provides that we may make derivative use of any investigative lead suggested by any statements made by the defendant. And that's what the defendant and his counsel agreed to when he sat down to speak to the government. So if this was drugs, and he said, I've hidden some drugs at my house, and you would go to the house, would that be derivative? And then you found the drugs, and you matched them up to some scheme of delivery and transport or something. Would that be derivative or would that be direct? I believe that would still be derivative, Your Honor. And again, the dividing line is between using the defendant's statement and attributing that statement to him. So you couldn't say at trial, he said that he was keeping drugs at his house, so he can't now say he didn't know there were drugs at his house. You couldn't do that unless he came forward and said, I didn't know, or something. Unless the agreement provided for us to use that. But you could use the drugs themselves to say, we found these drugs at his house. We could, and, Your Honor, I'll refer the Court to the D.C. Circuit's opinion in Hemphill, which talks about the scope of this sort of immunity with an immunity agreement that's substantially similar to this one. And the Court in that case explained that the only thing that this is a narrow form of immunity, narrow immunity, and the only thing the defendant is getting in this kind of immunity is not to have his statements used against him at trial. Similarly, the Second Circuit in the Lorenzo case said that this is a broad waiver of the defendant's other rights that the defendant would have. So in this case, the defendant and his counsel bargained for this kind of immunity. The government stayed well within the bounds by never attributing any statement about how the defendant concealed his cell phone to the defendant at trial. And for that reason, we would say that the government was acting consistently with the proffer session, or with the proffer agreement. Does this case at all involve the propriety of looking at somebody's phone and whether that's... I mean, our circuit has been pretty broad about that. Other circuits have not. That's percolating. It is, Your Honor. And we were very careful in this case. We got a search warrant to locate the phone by its number, and we also got a search warrant once we recovered the phone to search the contents of the phone. So the propriety of the search, not only has it not been briefed and therefore it's waived in this Court, but it shouldn't be an issue because we obtain search warrants at every stage for any kind of thing that could be considered a search for this phone. If there are no further questions about the issue of the evidence, I'll turn briefly to the sentencing issue, acceptance for responsibility. And there we would just point out that there cannot be any plain error for this forfeited issue. The defendant did not plead guilty, and he could have. The defendant complains that he didn't have an opportunity to plead guilty, but, of course, he could have pled guilty to the first indictment, which was on the books for several months. And then when the new charges were added in the superseding indictment, he still had the opportunity to plead guilty to some charges but not others. The defendant was also found in an uncontested ruling in the district court to have obstructed justice by telling his sister not to talk to law enforcement and telling his sister to hide a gun. So there could not have been any clear error on that point, and in any event, there couldn't have been any effect on his substantial rights because the sentencing range that would have applied even if the defendant were correct about acceptance for responsibility corresponds to the bottom edge of that range corresponds exactly to the variant sentence that the district court imposed in this case. So for those reasons, we believe that it's clear that the defendant was not entitled to acceptance of responsibility, and the sentence should be affirmed as well. If there are no further questions, I'm happy to yield the rest of my time to the court and ask that the judgment of the district court be affirmed. Thank you, counsel. You've saved time for rebuttal, counsel. So in rebuttal to the government, in reference to the case of acceptance of responsibility, it is a plain error review. Sentencing was a very dynamic hearing. There were a lot of things going on, and it was a situation that came up later when you really start to digest and look at a case, but there really wasn't an option in this case to take responsibility of just the drug counts. You know, it is that Hobson's choice that I referred to in my brief where either take it or leave it. You know, a car salesman can say you can have any car on the lot, any of the black ones, but there's only one black car on the lot, right? It's really not a choice, and so Mr. Benitez never had the option of just pleading guilty to just the drug counts because he was charged in the five-count indictment. And then going back to the cell phone again and the use of the contents of the cell phone, early on in the case, in the trial record, you'll see that the government spends a good amount of time in expert testimony, agents' experiences, and talking about how drug smugglers communicate with each other, and they go at length as to how they use the cell phones and how they communicate with each other. And so the government can't stand here and say that it was not an important and critical part of the case and evidence to find my client guilty of the marijuana counts on the indictment. And so, and I'll leave it on this. I thought about this a lot. How can I describe what the use of this cell phone was? I call it, I would call it a fruit of his testimony. It was a fruit of his testimony. It was not derivative use. The other, if it had been another witness testifying about the cell phone, that would have been derivative use. But it was the cell phone. So that's how I would, it's not derivative, but it is a fruit of his statement,  And that's all. Thank you, counsel. Thank you, Your Honor. We have your argument, and this case is submitted. And we know that you are a CJA-appointed counsel, and we appreciate your service to the court in this matter and to your client. Thank you. Thank you. Excuse? Yes, you may.